UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

LINDA D. BRADLEY and ROBERT )
GENE BRADLEY, )
  )
       Plaintiffs, )
  )
vs. ) CIVIL ACTION No. CV-96-S-0379-NE
  )
WAL-MART STORES, INC., )
  )
       Defendant. )

ENTERED

## MEMORANDUM OPINION    MAR 28 1997

This action is before the court on defendant's motion for summary judgment and plaintiffs' motion to strike. Plaintiffs assert claims against Wal-Mart Stores, Inc. ("Wal-Mart") premised upon negligence, wantonness, and fraud. Upon consideration of the motions, pleadings, briefs,[1] and evidentiary submissions,[2] this court concludes that defendant's motion is due to be granted and plaintiffs' motion denied.

### I. MOTION TO STRIKE

Defendant filed a motion for summary judgment on January 2, 1997. The "statement of facts" in the initial submission made repeated references to various portions of the deposition of plaintiff Robert Gene Bradley. Copies of certain pages from the deposition of Robert Bradley were appended to the initial submission as "Exhibit 2." The submission order required that

---

[1] In connection with the instant motion the court has considered: (1) Defendant's Motion for Summary Judgment; (2) Plaintiffs' Response in Opposition to Motion for Summary Judgment; and (3) Defendant's Reply to Plaintiff's Response to Motion for Summary Judgment.

[2] The court has considered the following evidentiary submissions: (1) Deposition of Linda D. Bradley; (2) Deposition of Robert Gene Bradley; (3) Affidavit of Glenda Crowell; and (4) Deposition of Jeff Preston.

"[a]ny additional evidentiary matters ... movant intends to rely on must be filed by January 15, 1997." After that date, however, it was discovered that several pages from the deposition of Robert Bradley to which reference had been made by defendant in its "statement of facts" and brief (to-wit, pages 42, 45, 46, 48 and 60) were omitted from the original evidentiary submission. It is clear to this court that those pages were inadvertently omitted. Further, because a copy of that deposition transcript was available to each party, plaintiffs suffered no prejudice as a result of defendant's clerical error.[3] Accordingly, plaintiffs' motion to strike is due to be denied.[4]

## II. FACTS

On April 7, 1995, plaintiff Linda Bradley drove with her husband Robert Bradley to the Wal-Mart store in Fayetteville, Tennessee. The couple separated after entering the premises. Mrs. Bradley walked to the health and beauty aids department and, while reaching for deodorant, her "right foot just went flying." (Linda Bradley Deposition at 53.) "I tried to catch myself on the shelves and I think I pulled half of Wal-Mart down with me." (*Id.*, 53.) At the time she fell, Mrs. Bradley was not looking where she was walking; and she testified that she did not see what she slipped on

---

[3] Defendant claims that plaintiffs' counsel possessed a copy of Robert Bradley's deposition transcript. (Defendant's Response to Plaintiffs' Motion to Strike at ¶ 4.)

[4] This court does not suggest that such acts of inadvertence and oversight will be met with such understanding in the future.

2

– either before or after her fall. The only items she noticed were those she pulled off shelves during her fall. (*Id.*, 59.)

Robert Bradley was several aisles away when his wife fell. (Robert Bradley Deposition at 21.) Upon hearing the commotion, he walked over to investigate and found his wife "crying and hollering." (*Id.*, 25.) Mr. Bradley immediately went looking for a Wal-Mart manager. When he returned to his wife, she was being attended by an unidentified Wal-Mart employee. That employee picked up a "bead" from the floor and said, "this might be what she fell on." (*Id.*, 73.) Mr. Bradley has no knowledge of how the bead got on the floor, or how long it had been there.

> Q. During the time while you were on the aisle where your wife fell, did any Wal-Mart employee say that they knew that whatever brownish article was on the floor before your wife's fall?
>
> A. No, ma'am.
>
> Q. Do you know how that brownish article got to the floor?
>
> A. No, ma'am. I wasn't even around it.
>
> Q. Do you know how long it had been on the floor?
>
> A. No, ma'am. No way of knowing.
>
> Q. Do you know if anybody had reported to Wal-Mart that it had been on the floor?
>
> A. No, ma'am.

(Robert Bradley Deposition at 43.)

Glenda Crowell was manager of the health and beauty aids department on the date of this incident. As part of her responsibilities, she periodically inspected the aisles of her

3

department to make certain they remained clean, clear, and free of any spills or foreign substances. (Crowell Affidavit at 1.) Ms. Crowell was informed of Mrs. Bradley's fall by a "code white" intercom announcement.[5] She immediately went to the deodorant aisle and found Mrs. Bradley lying on the floor. Mrs. Bradley told Crowell she did not know what caused her to slip, but commented that she was wearing slick sandals. (Id., 2.) Less than ten minutes before, Crowell had inspected the same aisle. (Id., 2.) "At that time, the aisle was clean, clear and free of any type of spill or foreign substance." (Id., 2.)

Linda Bradley was assisted into a wheelchair by a Wal-Mart manager. Robert Bradley testified that, prior to leaving the Wal-Mart store, Jeff Preston, an assistant manager, told him: "[i]f you have to go [to the hospital], tell them that Wal-Mart will take care of everything."[6] (Robert Bradley Deposition at 45.) Mrs. Bradley was then unwilling to be taken to a hospital, and her husband drove her home. (Id., 42.) Later that same day, however, Linda Bradley's condition worsened and she was taken to the hospital by her husband. (Id., 46.) Robert Bradley called a Wal-Mart manager[7] to say he was taking his wife to the hospital and alleges he was again reassured that Wal-Mart would "take care of it." (Id., 46.) Neither the Wal-Mart manager, Larry Pitts, nor

---

[5] A "code white" is Wal-Mart's signal, announced over the intercom, alerting management that an accident has occurred.

[6] Jeff Preston denies making any such comment. (Preston Deposition at 23-24.)

[7] Mr. Bradley does not recall who he spoke with.

4

the assistant manager, Jeff Preston, was authorized to tell a customer that Wal-Mart would pay medical expenses. (Jeff Preston Deposition at 24.)

### III. STANDARDS FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "<u>shall be rendered forthwith if</u> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. ..." (Emphasis supplied.) The movant bears the initial burden of showing the court, by reference to materials on file, that no genuine issues of material fact exist to be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The moving party discharges this burden by "showing" or "pointing out" to the court that there is an absence of evidence to support the non-moving party's case. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995)(per curiam). Rule 56 permits the movant to discharge this burden <u>with</u> or <u>without</u> supporting affidavits. *Celotex*, 477 U.S. at 325. When the moving party has discharged its burden, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *Jeffery*, 64 F.3d at 593.

In deciding whether the moving party has met its burden, the court is obligated to draw all inferences from the evidence presented in the light most favorable to the non-movant and, also,

5

to resolve all reasonable doubts in that party's favor. *Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Inferences in favor of the non-movant are not unqualified, however. "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted). Moreover, evidence that is merely colorable, *see Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, *see Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989), or conjectural, does not create a genuine issue of material fact.

Thus, if a reasonable fact finder evaluating the evidence <u>could</u> draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment. *Augusta Iron & Steel Works v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). A "genuine" dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffery*, 64 F.3d at 594 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

### IV. NEGLIGENCE AND WANTONNESS CLAIMS

In diversity cases, a federal court applies the choice of law rules of the state in which it sits. *Randolph v. Tennessee Valley Authority*, 792 F. Supp. 1221 (N.D. Ala. 1992)(citing *Klaxon Co. v.*

6

*Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). In Alabama, the rule of *lex loci delicti* governs tort actions, and requires application of the substantive law of the jurisdiction where the tort occurred. *Randolph*, 792 F. Supp. at 1222. Accordingly, this court must apply the tort law of Tennessee.

Under Tennessee law, the proprietor of a place of business owes customers a duty

> to exercise reasonable care to keep the premises in a reasonably safe and suitable condition, including the duty of removing or warning against a dangerous condition traceable to persons for whom the proprietor is not responsible ... if the circumstances of time and place are such that by the exercise of reasonable care the proprietor should have become aware of such conditions.

*Self v. Wal-Mart Stores, Inc.*, 885 F.2d 336, 338 (6th Cir. 1989)(citing *Simmons v. Sears, Roebuck and Co.*, 713 S.W.2d 640, 641 (Tenn. 1986)). To prove a breach of that duty of care, a plaintiff must demonstrate either that the proprietor or his agent created the dangerous condition, or that the proprietor or his agent had actual or constructive knowledge of its existence prior to the accident. *Self*, 885 F.2d at 338 (citing *Jones v. Zayre, Inc.*, 600 S.W.2d 730, 732 (Tenn.App. 1980); *Chambliss v. Shoney's, Inc.*, 742 S.W.2d 271, 273 (Tenn.App. 1987); *Maxwell v. Red Food Stores, Inc.*, 1988 WL 95273 (Tenn.App. September 16, 1988)).

Plaintiffs do not contend that defendant's agents created the dangerous condition, or had actual notice of its existence prior to Linda Bradley's fall. Therefore, this court's inquiry turns to whether Wal-Mart had constructive knowledge of the dangerous

condition. "If liability is to be predicated on constructive knowledge by the Defendant, the proof must show the dangerous or defective condition existed for such length of time that the defendant knew, or in the exercise of ordinary care should have known, of its existence." *Jones*, 600 S.W.2d at 732.

Plaintiffs have failed to show the length of time that any foreign material, if any there was, remained on the floor of Wal-Mart prior to Linda Bradley's accident. There are no witnesses to the accident and Linda Bradley testified that she never saw anything that may have caused her to slip and fall. (Linda Bradley Deposition at 57.) Robert Bradley was not present when his wife fell and he testified he had "no way of knowing" how long any foreign substance may have been in the aisle. (Robert Bradley Deposition at 43.)

On the other hand, the undisputed testimony of defendant's department manager, Glenda Crowell, establishes that, less than ten minutes before being notified of the accident, she was on the exact aisle where the incident occurred and, at that time, it was "clean, clear and free of any type of spill or foreign substance." (Crowell Affidavit at 2.) No evidence has been presented indicating that Crowell's inspection of the aisle was inadequate.

Thus, uncontested evidence shows that any foreign matter that may have been on the floor of the aisle in question was there for some period less than ten minutes. That is not a sufficient period of time upon which to predicate constructive notice. *See Tampas v. Target Stores*, 1994 WL 405950 (Tenn.App. 1994)(inconclusive proof

8

as to whether vomit was on floor for 15 seconds or 15 minutes "not sufficient to support a finding of constructive notice"); *Busler v. Cut Rate Super Market No. 1.*, 334 S.W.2d 738 (Tenn.App. 1960)(broken glass on floor for five minutes prior to accident was insufficient to constitute constructive notice); *see also, e.g., Hornbuckle Wholesale Florist of Macon, Inc., v. Castellaw*, 477 S.E.2d 348 (Ga.App. 1996)(constructive knowledge not established where employee inspected floor five to ten minutes prior to accident); *Temple v. Schwegmann Giant Super Markets*, 677 So.2d 1103 (La.App. 1996)(inspection ten minutes prior to accident revealing no spilled grapes on the aisle precluded finding of constructive notice); *Hose v. Winn-Dixie Montgomery, Inc.*, 658 So.2d 403 (Ala. 1995)(constructive knowledge not established where aisle was inspected five to ten minutes prior to accident); *Grant v. National Super Markets, Inc.*, 611 S.W.2d 357 (Mo.App. 1980)(proof of grapes on the floor for twenty minutes, absent other circumstances, was insufficient to establish constructive notice).

> [I]t is not to be presumed, under Tennessee law, that the proprietor of a self-service department store is an omniscient omnipresence, instantly aware of everything that transpires anywhere in the store.

*Self*, 885 F.2d at 339. Plaintiffs thus have failed to produce any evidence creating a genuine issue of fact as to whether Wal-Mart had constructive knowledge of any foreign material on the floor of the aisle in question prior to the accident. In addition, plaintiffs failed to produce any evidence of wanton conduct on the

9

part of Wal-Mart. Therefore, summary judgment is due to be granted as to those claims.

## V. FRAUD

To prove a claim for fraud, plaintiffs must establish four elements: (1) an intentional misrepresentation of material fact; (2) knowledge of the representation's falsity, and (3) an injury caused by reasonable reliance on the representation. *Axline v. Kutner*, 863 S.W.2d 421, 423 (Tenn.App. 1993). The fourth element requires that the misrepresentation involve a past or existing fact or, in the case of promissory fraud, that it involve a promise of future action with no present intent to perform. *Axline*, 863 S.W.2d at 423. Plaintiffs' fraud claim is based on the alleged representation of a Wal-Mart employee that Wal-Mart would pay for any medical bills resulting from Linda Bradley's accident. Even assuming such a representation was made, plaintiffs have failed to establish a *prima facie* case of fraud, because they have not presented evidence of injury caused by reasonable reliance on the representation. Robert Bradley testified that, even if Wal-Mart had not offered to cover medical expenses, he still would have taken his wife to the hospital.

> Q. Mr. Bradley, ... if Wal-Mart said, "Call us if you take her to the hospital, but we're not making any representations of whether we can pay these bills or not," would you have still taken your wife to the hospital when she was hurting.
>
> A. I sure would....

10

(Robert Bradley Deposition at 60.) Thus, Robert Bradley was not induced to act in reliance on the alleged representation. Accordingly, summary judgment is due to be granted.

An order consistent with this memorandum opinion will be issued contemporaneously herewith.

**DONE** this 28th day of March, 1997.

_____
United States District Judge

11